Allen, J.
At the November term of the Circuit court of Augusta county in the year 1852, Matthew Brogy was indicted for a rape. Being arraigned, he pleaded not guilty; and a jury was impauneled to try him; but not being able to agree, the jury was discharged. At the June term 1853 he was again *723 put upon Ms trial, found guilty and sentenced to the penitentiary for the period of ten years. In the progress of the trial the counsel of the prisoner tendered two bills of exceptions to rulings of the court; and after the verdict he moved the court to set it aside and grant a new trial of the cause upon the ground that the verdict was contrary to evidence; which motion the court overruled. To this decision the prisoner tendered his bill of exceptions, setting out all the evidence introduced at the trial, which was signed by the judge. To this judgment the prisoner has obtained a writ of error from this court.
The first error assigned is to the decision of the court admitting the evidence of the witness J as. J. A. Trotter, as complained of in the first bill of exceptions. That bill of exceptions sets out at length the testimony given at the trial by the female upon whom the outrage was committed tending to prove that the offence had been committed, by the prisoner and two others, who have been convicted, near the line of the railroad. And it would seem that the principal question before the jury, after the proof of the commission of the offence, was the identity of - the perpetrators. The transaction occurred in the vicinity of the Irish shanties on the line of the railroad. The witness deposed that she had never seen any of the men before. That she took very particular notice of the faces of the men. That she recollected no particular marks about any of them, except Halón, (a fourth person who had been tried and acquitted of this offence.) That Halón had a blot or blemish in his eye: That she could not say what the color of their clothing was, whether they had hats or caps on, or were bare headed, nor whether they had coats on. That she heard no conversation among the men, and did not hear the. prisoner say anything.
The witness further stated, that she was certain *724 that the prisoner at the bar was the second man who violated her, and that she was equally certain as to the other man. That she felt sure, before she' heard of any arrest, that she could identify them. That she did not recollect of having given any description of the men to any one. That on the next day, when she came to Staunton, she recognized Halón by the spot in his eye, and the other three by their features, and pointed them out to the magistrate in the order in which they violated her.
After sundry other witnesses had been examined, the commonwealth introduced the witness Trotter, and proposed proving by him that on the next morning after the perpetration of the outrage, he received from the female witness, before she had seen the men who were arrested, and while on the way to Staunton to attend the examination before a justice, a description of the persons who committed the outrage upon her; and proposed proving further the particulars of that description. To the introduction of which evidence the prisoner by his counsel objected, upon the ground:
First. That it was no part of the res gestee.
Second. That the particular description said to have been given by the female witness was inadmissible, even in confirmation of her testimony.
Third. Because she had given such description when not on oath, and now in her testimony upon oath declining to give any description of any of the .persons engaged, except the man Halón.
But the court overruled the objections of the prisoner, and admitted the evidence to go before the jury in corroboration or proof of the causa scientiee of the witness.
It does not appear from the bill of exceptions in what manner the statements of the witness above referred to were given, whether upon her examination *725 in chief or on her cross examination. She swears positively that she was certain the prisoner at the bar was the second man who violated her; and that she was equally certain as to the other men; but she recollected no particular marks about any of them except Halón, who had a spot or blemish in his eye. And in the third objection taken by the counsel of the prisoner, it is set forth that the witness now in her testimony on oath declined to give any description of the persons engaged except Halón. The evidence, therefore, of the witness Trotter tended to prove the only doubtful fact in issue, the identity of the prisoner ; and this by furnishing a particular of description given by the principal witness the day after the transaction; but which that witness could not or would not swear to on the trial.
But although she declined swearing to the particulars of description, yet it is maintained that being sworn to by independent witnesses, it is proper to go before the jury.
The bill of exceptions does not disclose what were the particulars of description which the testimony of the witness tended to prove. But being offered in eorroboration or proof of the truth of her knowledge of the identity of the prisoner; and as he was standing at the bar in the presence of the jury, the particulars probably conformed to his appearance.
As a general and almost invariable rule, the previous declarations of a witness not under oath cannot be given in evidence either as proof of substantive independant facts, or as confirmatory testimony, except in special cases. In prosecutions for rape the fact that the person injured made complaint recently after the commission of the offence, is admissible, and the absence of such complaint would be suspicious. The proof of such offences depends in a great measure upon the testimony of a single witness, and therefore *726 every test should be applied to her integrity for the safety of the accused. Proof therefore of a recent complaint is original evidence, if the party injured has been examined. So is also the state and appearance of the female, any marks of violence, and the condition of her dress shortly after the occurrence. But the fact of complaint is admissible for the purpose only of repelling the suspicion which grows out of the position of the witness; and this purpose is fully attained by the proof of the complaint as a substantive fact. If • it is carried beyond that point, then the rule which excludes hearsay and statements not under oath is violated without any sufficient reason.
In the case of The King v. Clarke, 3 Eng. C. L. R. 333, Holroyd, justice, decided that the fact of the complaint, as also a description of the state and appearance of the party injured, may be given in evidence ; but that the particulars of complaint were not evidence as to the truth of her statements. Thus putting the mere fact of the complaint upon the same footing with the state and condition of the party injured, as original substantive facts to- be weighed by the jury. But if the declarations of the injured party when not under oath, are also to be received as evidence of the facts which they purport to establish, the accused may be put in jeopardy by statements of facts not established by the sanction of an oath, or made in his presence. In the case of the Queen v. Megson, 38. Eng. C. L. R. 173, where the party injured died before trial, the court held that it was not competent to prove the particulars of the complaint made by her soon after the offence was committed, with a view of showing who the parties were who committed it. This in principle was similar to the case' under consideration. There the evidence was lost by the death of the witness; here by the inability or refusal to give such particulars under oath. There it was offered- as *727 independent testimony with a view of showing who were the parties who committed the offence. And here it is offered as tending to prove the identity of the prisoner by giving evidence of particulars of description corresponding with his appearance, or with other evidence showing that the description as given corresponded with the appearance of the prisoner at that time. And where the injured party was absent it was held that it was not competent to prove she made complaint soon 'after the occurrence, because evidence of recent complaint is to confirm her testimony ; but as she was absent her evidence was not before the jury to be confirmed. Queen v. Gutteridge, 38 Eng. C. L. R. 18; Queen v. Osborne, 41 Eng. C. L. R. 338.
I am not prepared to say that evidence of such complaint being made would not be proper as original testimony, although the pai;ty injured should not be examined as a witness. All testimony which proves a fact tending to establish a certain conclusion is confirmatory of other facts tending to prove the same fact. The judge, in the case of The King v. Clarke, ubi supra, seems to class the proof of fresh complaint and the appearance of the parties together, and treat all as independent testimony of original facts. But whether viewed as original or confirmatory evidence merely, does not affect the question here; and therefore I deem it unnecessary to express any opinion on the point. All the authorities referred to except the cases in Tennessee and Ohio, concur in holding that the particulars of the complaint are not admissible.
The foregoing eases decided, at nisi prius by a succession of able jurists, have given the rule in the English courts, and are referred to by all the elementary writers, English and American, as having placed it upon proper grounds. 1 Greenl. Evi. § 102; 1 Russ. *728 on Crimes 688; 1 Phil, on Evi. 193; Roscoe’s Grim. Evi. 23; Wharton’s Amer. Crim. Law 245.
The Attorney General has referred us to a case decided in Tennessee and two cases in Ohio, in which it is supposed a different rule has been established. The first.is the case of Phillips v. State, 9 Humph. R. 246. In that case the party injured was examined as a witness for the prosecution. After her examination, her husband was also examined as a witness for the prosecution, and was permitted to relate to the jury the statement of the circumstances and particulars of the alleged offence made to him by his wife recently after the perpetration thereof. Prom the statement of the case it seems the wife in her examination had stated the particulars, and the evidence of the husband proving similar statements to him shortly after the transaction, were admitted in confirmation of her testimony. The judge remarked that proof of the particulars of thé complaint cannot be admitted as original evidence to prove the truth of the statements, or to establish the charge made against the prisoner; but that it was admissible for the purpose of testing the accuracy, as well as the veracity of the witness: And for this position a remark of the judge in the case of The Queen v. Megson is relied on. In that case the party injured having died, the court decided it was not competent to prove the particulars of the complaint with a view of showing who the parties were who committed the offence. And the judge in his opinion observed, that where the witness describes the outrage in the witness box, evidence of her complaint soon after the outrage, is admissible to show her credit and the accuracy of her recollection. The case did not call for any opinion upon the question, how far the particulars of description could be given in evidence for such a purpose; and the expression itself is somewhat equivocal; whether he is to be understood *729 as meaning anything more than that the complaint itself was admissible for the purpose stated.
The case of Johnson v. The State, 17 Ohio R. 593, decides that the declarations in such case made immediately after the offence was committed, may be given in evidence to sustain her evidence given in court; but not as substantive testimony to prove the commission of the offence.
These decisions, it seems to me, carry the doctrine farther than is warranted by the true principle upon which such testimony is excepted from the general rule excluding all evidence of statements not under oath, and made in the absence of the party to be affected by them. That a female so injured should complain immediately is in consonance with all experience. The failure to complain whilst the injury was fresh would naturally excite suspicion that the charge was an afterthought. Evidence of the fact of complaint repels that suspicion affecting the credit of the witness; and the proof should not be permitted to go beyond the reason which permits its introduction.
Proof of declarations made by a witness out of court in corroboration of testimony given by him on the trial of a cause, is as a general, almost universal rule, inadmissible. A different opinion at one time prevailed, and Hawkins states the rule to be, that what the witness has been heard to say at another time may be given in evidence in order to confirm or invalidate the testimony given in court. Hawk. P. C. book, 2, ch. 46, § 48. But in Parker’s Case, 26 Eng. C. L. R. 95, the court decided that what a witness said when not on oath could not be admitted to confirm what he said upon oath; and that the passage in Hawkins was not law. Subsequent decisions have conformed to Parker’s Case. In conformity with these latter decisions the rule is laid down in 2 Philips’ Evi. 445, with one exception, which has no application to this case. “ It *730 may be observed (he says) oh this evidence in general, that a representation without oath can scarcely be • considered as any confirmation of a statement on oath. It is the oath that confirms ; and the bare assertion that requires confirmation.” See also Robb v. Hackley, 23 Wend. R. 50. The principle of this rule would exclude all such particulars of description at the time of the complaint. And there can be no reason, as it seems to me, to distinguish the case of rape from any other case where the credit of the witness is assailed. Identity becomes a question in most cases of felony, and if besides evidence of the complaint as an independent fact, evidence of the particulars may be given to test the accuracy of the witness, the same reason would hold in every other case.
Even, however, if the case of rape did admit of the exception suggested in the cases referred to from Ohio and Tennessee, this case would not fall within the principle of those cases. They merely decide that where the witness is examined, particulars of description contained in her complaint may be given in evidence to confirm her testimony. The proposition rests on the ground that in her examination on the trial, she has given such particulars; otherwise proof of them at a fo'rmer time could not tend to corroborate the accuracy of her testimony. But in the present case, instead of making any such statement when on oath, she declined to do so; and the witness was introduced to prove particulars of description alleged to have been given by her when not on oath, and not in the presence of the prisoner: I do not perceive how this could be treated as confirmatory evidence merely. It was evidence of an independent fact proved by a different witness ; and only tended to corroborate her testimony so far as the jury might believe the truth of such statement made to the witness on another occasion, as a fact proved in the cause.
*731 In this case the evidence was objectionable on still another ground. I have heretofore considered it as though the substance of the statements made to the witness Trotter, constituted a part of the complaint of the injured party made immediately after the commission of the offence. The bill of exceptions shows that immediately after her escape from her ravishers, she fled to the house of Michael Yessler, which she reached about early candle light. That Yessler took her the same evening to Mrs. Kellar’s. Whether she made complaint to Yessler, or to any one on arriving at Mrs. Kellar’s, does not appear from this bill of exceptions, or that if testimony was offered of such complaint it was objected to. She further stated that she did not recollect of having given any description 'of the men to any one. She therefore gave no evidence of any complaint to the witness Trotter. Such complaint would naturally have been made to Yessler or to some one at Mrs. Kellar’s. The proposition was to prove by the witness Trotter, not that she made complaint to him recently after the offence, or the particulars thereof, but the statements made to him the next morning, before she had seen the man arrested, and while on the way to Staunton to attend the examination before the justice, giving a description of the persons who committed the outrage upon her. Such statements could not be treated as part of the complaint which the law contemplates; and if they could be received as evidence, then any statements made by the party injured at any time before the trial would be admissible evidence upon a prosecution for rape. If so any declaration, no matter how exaggerated or corrupt, would be proper evidence for the consideration of the jury; whilst the party who made them, would escape all the responsibility resulting from the sanction of an oath. I think the evidence tendered was under the circumstances dis *732 closed in this bill of exceptions, inadmissible, and should not have been received. • '
The second bill of exceptions presents the question, Whether it was competent for the prisoner to prove what two persons had sworn to on a former trial of the cause; the witnesses having left the commonwealth before the second trial, and being beyond the jurisdiction of the court? This question was presented and directly decided by the General court as far back as 1827, in Finn’s Case, 5 Rand. 701. The evidence there was offered to prove what Candler had sworn to at the called court; the attorney for the commonwealth having proved that the witness, though living, was beyond the jurisdiction of the court; having left the commonwealth soon after he was summoned to attend as a witness. It was offered in connection with an alleged admission of the prisoner that what the witness had sworn at the called court was true as far as he went, but that he had not told all, or enough, when the prisoner was interrupted while speaking of the testimony. The court decided first that this interrupted conversation of the prisoner did not amount to a confession that the evidence was true; so that the admission of the prisoner laid no foundation for the introduction of the evidence. Having disposed of that proposition, the judge remarks, “A question, however, arises on this bill of exceptions of a graver and more important character. It is whether the evidence which Candler gave on the previous examination, can be admitted per se, and independently of the prisoner’s confession; Candler having removed from the commonwealth.” After stating that in civil cases where the witness is since dead, what he swore on a former trial may be given in evidence, the judge proceeds, “ But we cannot find that the rule has ever been allowed in a criminal case; indeed it is said to be expressly *733 decided otherwise:” And all the judges concurred in the opinion that the evidence was inadmissible.
This decision has never been controverted in Virginia since. The whole criminal code has since undergone a revision, but the rule, as laid down in Finn's Case, has been acquiesced in both by the courts and the legislature. I do not think it necessary therefore to go into the enquiry whether the rule was originally founded on proper principles or not. The rule has been established, and recognized, and, I think, should be adhered to; and whether a foundation had been laid for its introduction or not, the evidence was properly excluded.
But for the error complained of in the first bill of exceptions, the judgment should be reversed, and a new trial awarded.
Daniel and Lee, Js. concurred in the opinion of Allen, J.
Moncure and Samuels, Js. dissented on the first point. They were for affirming the judgment.
Judgment reversed.